IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAFAEL LOPEZ,

        Plaintiff,                     No. CIV S-08-826 FCD KJM P

    vs.

MARTEL, et al.,

        Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. He alleges that defendant Blim had him placed in administrative segregation in retaliation for a grievance plaintiff filed against correctional counselor Hamilton. Defendant Blim has moved for summary judgment.

I. <u>Standards For Summary Judgment</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

/////

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On July 18, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

//////

II. Facts[1]

In 2007, plaintiff was housed at Mule Creek State Prison (MCSP), where defendant Blim served as a correctional lieutenant. Declaration of J. Blim in Supp. Mot. For Summ. J. (Blim Decl.) ¶¶ 1, 7 (Docket No. 32-3); Complaint (Compl.) at 1-3. One of Blim's duties was to ensure the safety and security of the inmates and staff in Facility A. Blim Decl. ¶ 2. He had the authority to transfer an inmate to administrative segregation if the inmate presented an institutional threat. Id. ¶ 3.

On March 20, 2007, correctional counselor M. Hamilton wrote a "chrono" in order to document what she alleged was a pattern of sexual misbehavior by plaintiff. See Declaration of J. Bishop in Supp. Mot. For Summ. J. (Bishop Decl.) & Ex. 1 (Docket No. 32-4 at 7, 10).

On March 23, 2007, plaintiff filed a grievance (a "602"), alleging that Hamilton told other inmates that plaintiff was stalking her and that these rumors jeopardized his safety in the institution. Compl., Ex. A; Lopez Depo. at 25:11-12, 20-21.

On March 27, 2007, Blim received confidential information suggesting that plaintiff was planning to assault Hamilton. Blim. Decl. ¶ 7. He determined the information was reliable, generated a Confidential Information Disclosure or "1030" form and a confidential memo, and took steps to have plaintiff transferred to administrative segregation for the safety of MCSP. Blim Decl. ¶¶ 6, 8-9; Bishop Decl., Ex. 2 (Confidential Information Disclosure Form) (Docket No. 32-4 at 12); see also Docket No. 44 (sealed confidential memorandum).

Plaintiff disputes Blim's assertion that Blim received confidential information and avers that Blim fabricated the documents, although his reasons for this assertion are somewhat obscure. Opposition (Opp'n) at 2-3. However, according to plaintiff, on March 27, Blim summoned plaintiff to his office for the informal review of plaintiff's grievance and asked "did I

---

[1] The facts provided here are undisputed unless otherwise noted.

4

file a 602 on Hamilton and I said yes, sir, and he said he would move me out of building 2 . . . ." Lopez Depo. at 36:13-17, 27:6-7. Blim then told plaintiff to find a cell in building 4. Id. at 23:5-6, 36:18-19. When plaintiff returned from building 4, Blim told Officer Johnson to "take this guy straight to the ad seg" because "he filed 602." Id. at 21:10-12.[2]

When plaintiff arrived in the segregation unit, there was no paperwork. Id. at 21:19-23. In addition, when plaintiff went to the classification committee meeting fourteen days after being placed in segregation, he says Warden Subia told him there was no paperwork, though a captain reported he had a 114 report, or placement form, and confidential information. Id. at 17:14-18:3. Plaintiff's report of the warden's statements are inconsistent with the report generated after the hearing and signed by the warden, which refers to Blim's confidential memorandum. Bishop Decl., Ex. 3 (Docket No. 32-4 at 14). Moreover, plaintiff has attached copies of the 114 placement forms, one dated March 27, 2007 and the other April 11, 2007, and of the Confidential Information Disclosure 1030 forms to his opposition to the motion for summary judgment. Opp'n, Exs. A-D.

III. Analysis

Retaliatory actions taken against a prisoner for exercising his First Amendment rights violate the constitution whether or not the underlying misconduct would establish a constitutional violation. Rhodes v. Robinson, 408 F.3d 559 (9th Cir. 2005).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Id. at 567-68 (footnote omitted).

---

[2] This passage of plaintiff's deposition is not totally clear: plaintiff seems to conflate what Johnson and Blim said during this exchange. However, interpreting the passage in the light most favorable to plaintiff as required, the court construes his statement as saying that Blim told Johnson that plaintiff was being placed in segregation because of his 602.

The Ninth Circuit instructs:

> Because a prisoner's First Amendment rights are necessarily curtailed, however, a successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals. The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.

Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995) (quotation, citation omitted). A plaintiff may use direct or circumstantial evidence to support his claim that retaliatory animus was behind a prison official's actions. Id. at 808 (close temporal relationship between protected conduct and adverse action). Legitimate correctional goals include "the preservation of internal order and discipline and the maintenance of institutional security. Schroeder v. McDonald, 55 F.3d 454 (9th Cir. 1995). However,

> prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is in fact a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.

Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).

Plaintiff has proffered both direct and circumstantial proof that his placement in administrative segregation was motivated by his grievance against Hamilton. He testified that he was transferred almost immediately after Blim asked him about the grievance. When another officer asked why plaintiff was being taken to segregation, Blim replied that it was because plaintiff had filed a 602. Lopez Depo. at 21:9-12, 36:14-17.

Defendant has countered not with a "general justification" argument, but rather with specific information that he placed plaintiff in segregation to protect Hamilton's safety after considering confidential information he deemed reliable. Blim Decl. ¶¶ 9-10; Docket No. 44.

Plaintiff suggests there was no confidential information and hence no legitimate correctional goal. He bases this argument on the purported lack of paperwork when he arrived in segregation and the later lack of confidential information at his initial classification hearing.

1  Lopez Depo. at 17:14-18:7, 21:19-23.  He has not explained, however, how the absence of
2  paperwork when he first arrived in segregation translates to a showing that Blim had not received
3  confidential information.  Moreover, his own testimony and exhibits contradict his claim there
4  was no confidential information.  Opp'n, Exs. C, D; Lopez Depo. at 18:2-3.  Sprewell v. Golden
5  State Warriors, 266 F.3d 979, 989, as amended, 275 F.3d 1187 (9th Cir. 2001) (by providing
6  documents that undermine allegations, a plaintiff can plead himself out of a claim).[3]

7       Finally, plaintiff suggests that his placement in segregation was not justified by a
8  legitimate correctional goal because he "never had any a problem before, never" with Hamilton.
9  Lopez Depo. at 33:18-20.  This self-serving statement does not rebut defendant's showing that he
10 acted after receiving information about a threat to Hamilton, an action that furthered a legitimate
11 correctional goal.

12       IT IS THEREFORE RECOMMENDED that defendant's motion for summary
13 judgment (docket no. 32) be granted.

14       These findings and recommendations are submitted to the United States District
15 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
16 days after being served with these findings and recommendations, any party may file written
17 objections with the court and serve a copy on all parties.  Such a document should be captioned
18 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
19 /////
20 /////
21 /////
22 /////
23 /////

---

[3] He does further suggest that the 1030s prove nothing because some "regular officer" and not Blim signed them.  Lopez Depo. at 56:15-23.  He provides nothing supporting his claim, however, apart from his own interpretation of procedure or regulation.

7

shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 31, 2009.

_____
U.S. MAGISTRATE JUDGE

2/lope0826.msj